IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**SANDRA LYNN ALLEN**                                                                                            **PLAINTIFF**

**V.**                                                                                                 **NO. 4:20-CV-172-DMB-DAS**

**MISSISSIPPI DEPARTMENT OF**
**PUBLIC SAFETY, et al.**                                                                                       **DEFENDANTS**

**ORDER**

After Sandra Allen filed a complaint against the Mississippi Department of Public Safety and various individuals alleging numerous employment-related claims of discrimination and retaliation, the defendants moved to dismiss Allen's First Amendment claims. Because Allen has not sufficiently alleged that she spoke on a matter of public concern, the motion to dismiss will be granted.

**I**
**Procedural History**

On September 29, 2020, Sandra Lynn Allen filed a complaint in the United States District Court for the Northern District of Mississippi against the Mississippi Department of Public Safety ("MDPS"); Sean Tindell, Chairman and Commissioner of MDPS; Marshall L. Fisher, individually and in his official capacity as former Chairman and Commissioner of MDPS; and Kenneth K. Brown,[1] individually and in his official capacity as Director of the Driver Services Bureau. Doc. #1. Allen's complaint, which is 64-pages long and includes multiple citations to legal authority, contains twelve counts: (1) "Title VII Claim-Sex and Gender Discrimination;" (2) "Title VII Claim-Retaliation;" (3) "Equal Protection Claim;" (4) "Claim under the Equal Pay Act;" (5)

---

[1] In one instance, this defendant's middle initial is shown as "H." instead of "K." Doc. #1 at 1.

"Claims against Defendant Fisher;" (6) "Claims against Defendant Brown;" (7) "Employment Practices of the MDPS;" (8) "First Amendment Claim;" (9) "Section 1981 and Section 1983 Claims;" (10) "Declaratory Judgment and Injunctive Relief;" (11) "Hostile Work Environment Claim;" and (12) "Punitive Damages, Attorney's Fee and Equitable Relief." *Id.* at 33–61. Based on these claims, Allen seeks injunctive relief; back pay; actual and compensatory damages from MDPS, Fisher, and Brown; and punitive damages from Fisher and Brown. *Id.* at 62–64. The defendants answered the complaint on October 21, 2020. Doc. #7.

On December 11, 2020, the defendants filed a motion to dismiss Allen's First Amendment claims.[2] Doc. #15. The motion is fully briefed. Docs. #16, #25, #27.

## II
## Standard of Review

The defendants bring their motion "pursuant to Rule 12(b)(6) and/or 12(c) of the Federal Rules of Civil Procedure." Doc. #15 at 1. Where, as here, a defendant files a motion to dismiss after filing an answer, the motion should be viewed as brought under Rule 12(c).[3] *Triplett v. LeBlanc*, 642 F. App'x 457, 459 (5th Cir. 2016). "A Rule 12(c) motion is subject to the same standard as a motion to dismiss under FRCP 12(b)(6)." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

"To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state

---

[2] The same day, MDPS and the individual defendants in their official capacities filed a separate motion to dismiss Allen's § 1983 claims. Doc. #13. The Court granted the motion to the extent is sought dismissal of Allen's § 1983 claims against MDPS and denied it in all other respects. Doc. #35.

[3] Although Rule 12(c) motions by name are motions for judgment on the pleadings, Rule 12(h)(2) allows a party who has already filed an answer to seek dismissal for failure to state a claim through a motion under Rule 12(c). *See* 5c CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (3d. ed. 2020) ("The Rule 12(c) motion may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings.").

a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (cleaned up). The court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

### III
### Factual Allegations

Allen, a Caucasian female, has worked as a Driver's License ("DL") Examiner in the Driver Services Division of MDPS since November 1990. Doc. #1 at ¶ 35. Allen also performs the duties of a Terminal Agency Coordinator ("TAC") officer but has not been properly classified as such. *Id.* at ¶¶ 40–41. On June 22, 2016, Allen "was re-classified from a MDPS-Regular Driver License Examiner IV to a MDPS-Regular Driver Licenser, Sr." *Id.* at ¶ 38. Because her reclassification did not recognize her as a TAC officer (despite her performance of the duties of the position), "MDPS did not provide additional compensation for the additional permanent duties" she performed, and she suffered a loss of pay and retirement benefits. *Id.* at 38.

In February 2019, Allen learned that "MDPS provided raises in salary to other DL Examiners, similar to her, but not of her sex and gender." *Id.* at ¶ 58. As a result, on February 5, 2019, Allen filed a grievance with MDPS over the misclassification of DL Examiners, disparate pay, and discrimination. *Id.* at ¶¶ 68, 74.

Three days after Allen filed the grievance, Brown called Allen at her office and "yelled" at her for "making him look bad" and told her he was going to "bring her down" to a meeting at headquarters. *Id.* at ¶ 77. On February 13, 2019, Allen and another female DL Examiner traveled to MDPS headquarters to meet with MDPS officials to discuss grievances over pay. *Id.* at ¶ 83. After the other woman left her meeting crying, Allen entered a meeting with "M/S Fair, LT Hall,

3

and Captain Jay Kelly," who were members of her chain of command, and Brown. *Id.* at ¶¶ 84–85. Brown told Allen that she "did not have a grievance" and "was making it personal." *Id.* at ¶ 85 (emphasis omitted). "Allen was bullied and raked over the coals" by Brown. *Id.* at ¶ 92 (internal quotation marks omitted). Two days later, her grievance was denied by Fair. *Id.* at ¶ 93.

On February 18, 2019, Allen informed MDPS' human resources department of Brown's "bullying conduct" during the phone call and meeting. *Id.* at ¶¶ 94–95. On March 8, 2019, Kelly "denied … Allen any relief in regard to her grievance." *Id.* at ¶ 96. Approximately two weeks later, Allen filed an appeal with the Mississippi Employee Appeals Board. *Id.* at ¶ 99.

On or about April 8, 2019, MDPS informed the DL examiners by memorandum of its decision to "eliminate the 'Regular Driver License Class' and place all of you in the State Personnel Board approved positions as DL Examiners, once all details have been finalized in our Human Resource department." *Id.* at ¶¶ 104–105.

On June 12, 2019, Allen filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging sex discrimination and retaliation. *Id.* at ¶ 107. After the charge was filed, Allen's grievance appeal was dismissed because the Administrative Law Judge "ruled that … Allen had chosen to seek relief from the EEOC and that [the appeals board] lacked jurisdiction." *Id.* at ¶ 120. The next month, MDPS "provided an upward salary adjustment for DL Examiners. However, the MDPS failed to address … Allen's permanent job duties, her additional pay, and being underpaid as on account of her sex and gender." *Id.* at ¶ 113. Allen "continues in her role as TAC Officer certifying and re-certifying employees without any additional pay or benefits" and has lost job duties to less qualified individuals. *Id.* at ¶¶ 115–16.

IV
**Analysis**

Allen alleges she was "unlawfully retaliated against for exercising her First Amendment rights" after complaining about sex and gender discrimination. Doc. #1 at 53–54. The defendants argue that the First Amendment claims should be dismissed because her speech—her grievance, appeal, and EEOC charge—was unprotected by the First Amendment. Doc. #16 at 2–3.

To establish a First Amendment retaliation claim, a "plaintiff must show that (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighs the employer's interest in promoting efficiency in the workplace; and (4) his speech motivated the employer's adverse employment action." *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016) (internal quotation marks omitted). The defendants focus on the second element. Doc. #16 at 6.

> Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. The inquiry turns on the content, form, and context of the speech.

*Lane v. Franks*, 573 U.S. 228, 241 (2014). "If speech in a given case is of both public and private concern, i.e., a mixed speech case, the court applies these three factors to determine whether the speech is predominately public or predominately private." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 341 (5th Cir. 2003). If the speech is predominately private, "it is not regarded as addressing a matter of public concern." *Id.*; *see Gibson*, 838 F.3d at 484 ("Speech that is related only to a superior's employment decisions and that affects a plaintiff in a purely personal manner is not a matter of political, social, or community concern.").

The defendants, relying on *Ayoub v. Texas A & M University*, 927 F.2d 834, 837 (5th Cir. 1991), argue that "[t]here are no allegations that [Allen] took [her] complaints to any public forum

or otherwise apprised the public of a matter of public concern. Rather, [Allen] was upset about her own pay, and what she perceived as bullying by her supervisor when she complained about it." Doc. #16 at 6. Allen responds that she spoke not only on her individual concerns but "as a spokesperson for DL Examiners." Doc. #25 at 13. The defendants reply that Allen "made no public call for any broader investigation into the practices of the MDPS" and her EEOC charge "relates solely to her demand for increase [sic] pay." Doc. #27 at 3.

Allen's speech consists of her February 2019 grievance (and her appeal of the grievance denial) and her June 2019 EEOC charge. Doc. #1 at ¶¶ 74, 107. The grievance addressed "the misclassification of DL Examiners, disparate pay, [and] discrimination." *Id.* at ¶ 68. The EEOC charge alleged that "[a]s a whole, female DL Examiners have been treated different in terms and conditions of employment," and sought "injunctive relief, and equal pay" for Allen. Doc. #1-1 at PageID 69–71. As Allen alleges that her grievance and EEOC charge challenged a widespread practice of gender discrimination rather than only her individual experiences, the content of her speech is best recognized as addressing both private and public concerns. *See Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008) ("It is well-established … that speech relating to official misconduct or racial discrimination almost always involves matters of public concern."); *Blackwell v. Laque*, 275 F. App'x 363, 369 (5th Cir. 2008) (speech was on a matter of public concern when it addressed both the plaintiffs' personal interests and racial discrimination).

However, even if the content of Allen's speech was on a matter of public concern, the form and context of her speech ultimately favor a determination that she spoke on a private concern. The form of an employee's speech is private when she speaks "exclusively through internal mechanisms" rather than airing her "grievances to the public or to the media," and seeks only personal relief. *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 847 (S.D. Tex. 2003)

6

(employees' internal grievances and EEOC charge suggested private speech); *Cutrer v. McMillan*, 308 F. App'x 819, 821 (5th Cir. 2009) ("Lodging a complaint with the EEOC, without further airing of grievances, implicates only the private employment interests of the plaintiff and is not conduct that constitutes speech on a matter of public concern."). However, "[s]peech that is purely private in form may qualify as public-concern speech if the context shows a relation to a matter of active and articulated public concern." *Bates*, 425 F. Supp. 2d at 847. "Although discrimination … can certainly be a matter of public concern," when presented in an EEOC charge, it is "a purely personal and private matter." *Cutrer*, 308 F. App'x at 822 (*citing Ayoub*, 927 F.2d at 838) (class-action EEOC charge was not protected speech where "there was no conduct by Plaintiffs publicizing their complaints or otherwise indicating that the speech was intended to raise a matter of public concern rather than a dispute about Plaintiffs' employment conditions").

Here, although Allen alleges that she sought to address wide-spread discrimination, her speech was only in an internal grievance and EEOC charge seeking relief for her alleged treatment. She also does not indicate that "her speech occurred against a backdrop of widespread debate in the community." *Gibson*, 838 F.3d at 487. Because Allen has not alleged sufficient facts to show that she spoke on a matter of public concern, her First Amendment claims will be dismissed. However, because it is not clear that the pleading defects identified in this order are incurable or that Allen is unwilling or unable to amend her complaint in a manner that would avoid dismissal, dismissal will be without prejudice to Allen seeking leave to amend. *See Fried Alligator Films, LLC v. N.Y. Life Ins. Co.*, No. 4:16-CV-175, 2017 WL 4355825, at *11 (N.D. Miss. Sept. 29, 2017) (collecting cases).

## V
## Conclusion

The defendants' motion to dismiss [15] is **GRANTED**. Allen's First Amendment claims are **DISMISSED without prejudice**. Within fourteen (14) days of the filing of this order, Allen may seek leave to amend her First Amendment claims.

**SO ORDERED**, this 15th day of April, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**