**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

SANDRA LYNN ALLEN                                                                PLAINTIFF

V.                                                                NO. 4:20-CV-172-DMB-DAS

MISSISSIPPI DEPARTMENT OF
PUBLIC SAFETY, et al.                                                                DEFENDANTS

## OPINION AND ORDER

Sandra Allen sued the Mississippi Department of Public Safety and various individuals alleging numerous employment-related claims of discrimination and retaliation. The defendants have moved for summary judgment on all claims. For the reasons explained below, summary judgment will be granted.

**I**
## Relevant Procedural History

On September 29, 2020, Sandra Lynn Allen filed a complaint in the United States District Court for the Northern District of Mississippi against the Mississippi Department of Public Safety ("MDPS"); Sean Tindell, Chairman of MDPS; Marshall L. Fisher, individually and in his official capacity as former Chairman of MDPS; and Kenneth K. Brown,[1] individually and in his official capacity as Director of Driver Services Bureau. Doc. #1. Allen's complaint contained twelve counts: (1) "Title VII Claim-Sex and Gender Discrimination;" (2) "Title VII Claim-Retaliation;" (3) "Equal Protection Claim;" (4) "Claim under the Equal Pay Act;" (5) "Claims against Defendant Fisher;" (6) "Claims against Defendant Brown;" (7) "Employment Practices of the MDPS;" (8) "First Amendment Claim;" (9) "Section 1981 and Section 1983 Claims;" (10) "Declaratory

---

[1] In one instance, this defendant's middle initial is shown as "H." instead of "K." Doc. #1 at 1.

Judgment and Injunctive Relief;" (11) "Hostile Work Environment Claim;" and (12) "Punitive Damages, Attorney's Fee and Equitable Relief." *Id.* at 33–61. Based on these claims, Allen sought injunctive relief; back pay; actual and compensatory damages from MDPS, Fisher, and Brown; and punitive damages from Fisher and Brown. *Id.* at 62–64. The defendants answered the complaint on October 21, 2020.[2] Doc. #7.

On December 11, 2020, the defendants filed two separate motions to dismiss certain of Allen's claims. Docs. #13, #15. Approximately six weeks later, after the motions to dismiss were fully briefed[3] but before the Court ruled on them, the defendants filed a motion for summary judgment. Doc. #28.

The Court addressed the motions to dismiss in two separate orders issued April 15, 2021. The Court granted the defendants' motion to dismiss the § 1983 claims against MDPS after finding such claims improper but denied the motion to the extent it sought dismissal of the § 1983 claims against the individual defendants. Doc. #35 at 6–7. The Court also granted the defendants' motion to dismiss Allen's First Amendment claims after finding that she "ha[d] not alleged sufficient facts to show that she spoke on a matter of public concern." Doc. #36 at 7. However, the Court allowed Allen a period of time to seek leave to amend her complaint to properly allege the First Amendment claims. *Id.* at 8.

With leave of the Court,[4] Allen filed an amended complaint on June 1, 2021, naming the same defendants and asserting the same counts as in her original complaint. Doc. #42. Because the Court "conclude[d] that it judicially would be most efficient to address the relevant issues in

---

[2] The Clerk of Court instructed the defendants to refile the answer using the proper login credentials and the defendants did so the same day. Doc. #10.

[3] Docs. #14, #16, #23, #25, #26, #27.

[4] Doc. #41.

an updated motion for summary judgment which addresses the amended complaint," the Court denied the defendants' motion for summary judgment without prejudice. Doc. #54 at 2.

On December 16, 2021, the defendants filed a "Second Renewed Motion for Summary Judgment."[5] Doc. #86. The summary judgment motion is fully briefed. Docs. #87, #121,[6] #134. After Allen responded to the motion, the defendants moved to strike some of her summary judgment evidence and related arguments. Doc. #130. Following the defendants' reply in support of summary judgment, Allen moved to strike some of the defendants' summary judgment evidence. Doc. #138.[7] The motions to strike are also fully briefed. Docs. #131, #137, #140 (briefs regarding the defendants' motion to strike); Docs. #139, #141, #143 (briefs regarding Allen's motion to strike).

## II
## Evidentiary Matters

Through their respective motions to strike, the parties dispute whether certain summary judgment evidence is proper.

### A. Defendants' Exhibits

In her memorandum opposing summary judgment, Allen characterizes "documents and charts" attached to Denise Blanton's affidavit as hearsay and as "created for this litigation." Doc. #121 at 18. In response, the defendants submitted the affidavit of Hannah Harrison with their

---

[5] The defendants filed a "Renewed Motion for Summary Judgment" on November 17, 2021. Doc. #64. The Court denied the motion without prejudice because it failed to comply with the Local Rules. Doc. #85.

[6] Allen received leave to exceed by ten pages the Court's thirty-five-page limit for her brief. Doc. #129. However, the defendants argue the Court should disregard portions of the brief because Allen "included at least five pages of single-spaced content in violation of L.U. Civ. R. 7(b)(5)(A)." Doc. #134 at 2–3. Despite what appears to be Allen's attempt to circumvent the page limit beyond the additional pages granted, the violation will be excused in this instance because consideration of her entire filing does not alter the Court's ultimate ruling on the summary judgment motion.

[7] Allen incorrectly docketed the motion as one seeking to strike the defendants' reply memorandum.

summary judgment reply.  *See* Doc. #134 at 3; Doc. #133-1.  Allen moves to strike Harrison's affidavit on grounds that "neither Ms. Harrison nor the documents attached to her Affidavit were produced by [the defendants and] Ms. Harrison has never been disclosed as having knowledge of the claims or defenses in this action or being designated as giving expert opinions in this action or her expertise in the 'methodology' in obtaining the information provided."  Doc. #139 at 2.

The defendants respond that "then-HR Director Natalie Holmes prepared a position statement [in response to Allen's EEOC charge] and attached to it charts reflecting salaries of *all DLE's* as of February 2019 and July 2019, after a realignment;" "[t]his document was … produced to [Allen] in initial disclosures;" in her initial disclosures, Allen identified Holmes "or her successor or Agency designee;" at the time they filed their motion for summary judgment, "Holmes was no longer at MDPS, so Blanton was asked to sign an Affidavit authenticating … two charts – one showing DLE salaries in February 2019, and one showing DLE salaries in October 2020;" "the information contained in these two charts was consistent with what Holmes had produced and prepared for the EEOC in July 2019;" and "Harrison is Holmes' successor."  Doc. #141 at 2–3.  Additionally, the defendants argue that because Allen identified Easterling as a comparator for the first time in her March 2, 2022, deposition the day before the discovery deadline and argued for the first time in her summary judgment response that "Herrington's salary history would reflect that he was given multiple raises and reclassifications so that he would earn as much as [her]," they "are entitled to rebut [Allen's] unsubstantiated arguments."  *Id.* at 4.  Allen replies that she identified both Herrington and Easterling in her initial disclosures.  Doc. #143 at 2.

### B.  Allen's Exhibits

The defendants move to strike multiple of Allen's exhibits (or portions of exhibits) on grounds that they are unauthenticated, irrelevant, lack foundation, and/or contain hearsay and thus

"are not competent summary judgment evidence." Doc. #130 at 1. Specifically, the defendants seek to strike a "23-page listing of what purports to be the salaries of all DPS personnel;" a "2-page document entitled 'Preparing for a Desk Audit;'" a "3-page website printout of article dated January 14, 2019 entitled 'Analysis: Public safety chief seeks exit from civil service;'" the declarations of Patricia Jolley, Treva Brumfield, and Ola Kirk; and portions of Allen's declaration. Doc. #131 at 1–11.

Allen responds that each document is admissible because the listing of personnel was identified by Fisher and her, the "MDPS … is governed by the Mississippi State Personnel Board ('MSPB')" and "[d]esk audits are part of the policies and procedures of the MSPB," and Fisher "reviewed the article and admitted these were ***his words*** reported in the article." Doc. #137 at 5–10. With respect to the declarations, Allen argues that the defendants misconstrue their contents, and the declarations contain relevant information. *Id.* at 11–16.

## C. Discussion

Although prior to the December 1, 2010, revision to Rule 56 the proper method to challenge summary judgement evidence was a motion to strike, "it is no longer necessary for a party to file such a motion; instead, the party may simply object to the material." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012). As this Court previously explained:

> The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings. However, the federal courts are vested with inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases, including the power of the court to control its docket. A court, exercising this inherent power, may strike an improperly filed document. This authority should be invoked only in extreme cases, however, and it must be used with great restraint.

*McNeal v. Tate Cnty. Sch. Dist.*, No. 2:70-cv-29, 2016 WL 6651328, at *3 (N.D. Miss. Nov. 10,

2016) (internal citations omitted).  When considering objections to summary judgment evidence, a district court "has broad discretion in its decisions to admit evidence."  *Bennett v. GEO Grp., Inc.*, No. 12-60017, 2013 WL 5916765, at *5 (5th Cir. 2013) (quoting *United States v. Torres*, 114 F.3d 520, 525–26 (5th Cir. 1997)).

Based on the parties' arguments on the motions to strike, the Court concludes this is not an "extreme case" that would warrant striking evidence.  The relevant information in Blanton's and Harrison's affidavits—the salaries of various MDPS employees—is consistent with Allen's 23-page salary listing.[8]  With respect to whether Allen's exhibits are authenticated, a plaintiff "need not authenticate evidence at the summary judgment stage if it can be authenticated at trial"[9] and Allen has presented argument as to how each document would be authenticated should the case proceed to trial.  And "the bar is low" to establish relevancy because "evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"[10] and each declaration deals with MDPS' employment practices—which are the subject of Allen's claims.  Because the Court does not consider any of the exhibits improperly filed, the motions to strike are denied.[11]

---

[8] *See* Doc. #119-1 at PageID 1359–81.  The Court relies on Allen's evidence in setting forth the facts below and only references Blanton's and Harrison's affidavits for additional support.

[9] *Tijerina-Salazar v. Venegas*, No. 19-cv-74, 2022 WL 1927007, at *22 (W.D. Tex. June 3, 2022) (citing *Maurer v. Independence Town*¸ 870 F.3d 380, 384 (5th Cir. 2017)).

[10] *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 809 (5th Cir. 2017).

[11] And because the evidence to which each party objects is either consistent with evidence submitted by the opposing party or "does not affect the disposition of the summary judgment motion," the objections are overruled.  *Venegas*, 2022 WL 1927007, at *22 (quoting *Lilly v. SSC Hous. Sw. Operating Co. LLC*, No. 4:20-cv-3478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022)); *see Jones v. United Parcel Serv., Inc.*, No. 3:06-cv-1535, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying as moot objections to summary judgment evidence because it was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

**III**
**Summary Judgment Standard**

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (internal quotation marks omitted).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones*, 936 F.3d at 321 (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up).

**IV**
**Relevant Facts**

Allen began her employment with MDPS as a testing clerk in driver services in November 1990. Doc. #119-1 at PageID 1125. Sometime in the late 1990's, MDPS started using classifications to assign levels to Driver's License Examiners ("DLEs"). *Id.* at PageID 1127–28. At that time, Allen was classified as an Examiner III. *Id.* at PageID 1128. At some later point, MDPS notified Allen that she had been reclassified as an Examiner senior. *Id.* at PageID 1129.

7

"[T]here were no extra or higher classifications in driver services" beyond Examiner senior. *Id.* at PageID 1188.

In approximately 2010, Ola Kirk, who "was the master sergeant at that time," asked Allen to take over Terminal Agency Coordinator ("TAC")[12] duties after another employee retired. *Id.* at PageID 1131. The TAC deals with the National Crime Information Center ("NCIC") machines which are located in every office. *Id.* at PageID 1133, 1135. The TAC is "responsible for ensuring that all policies and procedures are followed by [the] agency" and "training and certifying all personnel with [the] agency" in accordance with state policies. Doc. #119-2 at PageID 1509. Employees must be recertified every two years. Doc. #119-1 at PageID 1135.

As part of the TAC duties, "the master sergeants always sent every new employee to [Allen] to be trained on the NCIC as well as to be trained in driver services on … day-to-day basic qualifications." *Id.* at PageID 1150. But when Rolando Fair became master sergeant in "either 2015 or 2016," he stopped sending new employees to Allen "except for [her] to make sure they were tested on the NCIC machine." *Id.* at PageID 1141–42, 1150. The TAC duties "never stopped" being a part of Allen's job until she received a promotion in July 2021 and was no longer a DLE. *Id.* at PageID 1139, 1155.

In 2016, Allen complained to Santa Cruz[13] that the pay in driver services "ha[d] not been the grandest, if at all fair, for what [they] do;" more duties were added to the position without pay raises; and new employees were making almost as much as employees "who'[d] been on 10 years or 15 years." *Id.* at PageID 1162. The salaries of all MDPS employees were posted on the website "Jackson Jambalaya" in 2018. *Id.* at PageID 1177, 1183–84. Based on this website, Allen

---

[12] Doc. #119-2 at PageID 1436.

[13] Allen identified Santa Cruz as the "previous" commissioner. Doc. #119-1 at PageID 1161.

discovered that Haywood Herrington[14] was "making the same amount" as she was when she had "been doing the TAC position for over ten years and not getting any … extra pay for it." *Id.* at PageID 1165; *see id.* at PageID 1359, 1367 (showing Allen's and Herrington's salaries as $36,375.09). Allen also learned that Tommie Taylor, "the longest working examiner in the state," had been moved to a new position and was making more than her because Taylor "was doing CDL and [Allen] wasn't." *Id.* at PageID 1178–79, 1184; *see id.* at PageID 1378 (listing Taylor as an "OP/MGMT Analyst Principal" with a salary of $41,352.60).[15]

At a regional meeting in December 2018, Allen asked Brown if DLEs could leave at 2:00 p.m. one day during holiday weeks because "[a]ll of headquarters [was] allowed to do it" and the DLEs had done so previously. *Id.* at PageID 1259–60. Brown told her they could not have the time off. *Id.* at PageID 1205–06, 1260–61. According to Brown, although he was "aware of issues" related to the salaries of the DLEs, it was not discussed at this regional meeting. Doc. #119-2 at PageID 1396, 1402. However, according to Patricia Jolley, a former MDPS employee, at the meeting a DLE asked "how come someone hired after [the DLE] and doing the same job was paid more" and Brown responded that "maybe she knows somebody." Doc. #119-9 at 2.

On February 5, 2019, Allen filed a grievance about her pay "to make the suggestion that, not just [her], but everybody in driver services was not getting their steps." Doc. #119-1 at PageID 1190, 1193; Doc. #119-5 at PageID 1749–52. After she filed the grievance, Brown called Allen to tell her that she "d[id] not have a grievance" and told her she "made it personal" by including his name. Doc. #119-1 at PageID 1198. Because Allen was dealing with customers at the time,

---

[14] Allen refers to Herrington as "Woody." Doc. #119-1 at PageID 1168.

[15] Lincaster Easterling is listed in the same position as Taylor with a salary of $41,700.09. Doc. #119-1 at PageID 1364.

she told Brown she had "nothing else to say on the matter at th[at] time." *Id.* at PageID 1207–08. Brown informed her she would be brought down for a meeting and "slammed the phone down." *Id.* at PageID 1208.

On Wednesday, February 13, Fair drove Allen and another employee to Jackson for a meeting with himself, Brown, Captain Jay Kelly, and Lieutenant Hall. *Id.* at PageID 1193–94, 1210–11; Doc. #30-2 at 4. Allen asked to record the conversation and Brown told her she could not. Doc. #119-1 at PageID 1217–18. At the meeting, Brown told her that she did not have a grievable offense and there was not a TAC officer in driver services. *Id.* at PageID 1191–92.

After the meeting, Allen's grievance was denied and she unsuccessfully appealed the denial to Lieutenant Hall and then Captain Kelly. *Id.* at PageID 1227–29; Doc. #119-5 at PageID 1749–50. Kelly informed Allen that any pay increases had to come through the legislature. Doc. #119-1 at PageID 1230. Allen's next step would have been to appeal the denial to Brown but she had already met with Brown. *Id.* at PageID 1230. Her appeal then went to the employee appeals board but was ultimately dismissed because Allen also filed an EEOC charge. *Id.* at PageID 1231.

According to Allen, she was retaliated against after filing the grievance. *Id.* at PageID 1233. In addition to Brown "calling [her] down like he did … and trying to rake [her] through the coals on the phone and in front of his desk," while she still performed both her DLE and TAC duties, employees were not sent to her for training and MDPS was "still not doing anything as far as compensation or recognition up until the new administration" in July 2021. *Id.*

## V
## Analysis

The defendants seek summary judgment on all of Allen's claims, arguing she "lacks a sufficient factual basis to support the *prima facie* elements of each of her claims, and /or her claims

are barred by immunity." Doc. #86 at 3.

### A. Title VII against Fisher and Brown

The defendants argue Allen's Title VII claims against Fisher and Brown fail because they are not her employer and "a Title VII suit against an employee is actually a suit against the corporation, or in this case the State via MDPS." Doc. #87 at 17. Without any citation, Allen responds that "[a]gents who may be held liable under Title VII are those supervisors who are responsible for the terms and conditions of a plaintiff's employment." Doc. #121 at 17.

"[R]elief under Title VII is available only against an employer, not an individual supervisor or fellow employee." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003). Because there is no dispute Allen was employed by MDPS, her individual Title VII claims against Fisher and Brown are meritless and summary judgment on these claims is proper.

### B. Disparate Treatment

The defendants argue that Allen's claims under Title VII, the Equal Protection Clause of the Fourteenth Amendment, the Equal Pay Act, and the First Amendment[16] "depend on proof that she suffered an adverse employment action, which [she] contends to be that disparate treatment regarding compensation" and that her claims fail "because, at all relevant times, she received the second the [sic] highest salary paid to DLEs at MDPS, no male DLEs were paid more than her, and she has never suffered an adverse employment action while employed at MDPS." Doc. #87 at 7–8.

"The burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411

---

[16] Besides this initial statement, the defendants do not present any argument regarding the First Amendment claims in the disparate treatment section of their brief. *See* Doc. #87 at 7–10. Accordingly, the Court does not address those claims here.

11

U.S. 792 … (1973), governs [Title VII, Equal Pay Act, and Equal Protection] claims."[17] *Lindsley v. TRT Holdings, Inc.*, 984 F. 3d 460, 466 (5th Cir. 2021); *see Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018) (explaining that Equal Protection claims brought under § 1983 alleging wage discrimination are analyzed under the same "doctrinal framework applicable to wage-discrimination cases brought under Title VII"). Under this framework, "the plaintiff [alleging wage discrimination] has the initial burden to establish a prima facie case of pay discrimination." *Lindsley*, 984 F.3d at 466. "If [the] plaintiff establishes a prima facie case, then the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for the pay disparity. Under Title VII …(but not under the Equal Pay Act), if the employer provides such a reason, the burden shifts back to the plaintiff to establish that the employer's stated reason is pretextual." *Id.* at 467; *Wilder v. Stephen F. Austin State Univ.*, 552 F. Supp. 3d 639, 654 (E.D. Tex. 2021) ("Essentially, the court will always consider pretext if the analysis gets that far, but the burden never shifts back to the plaintiff in an [Equal Pay Act] claim.").

"To establish a *prima facie* case of wage discrimination under Title VII, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 831 (5th Cir. 2015) (internal quotation marks omitted) (quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008)). "To state a prima facie case for wage

---

[17] Relying on two declarations from Patricia Jolley and Treva Brumfield, former MDPS employees, Allen argues that *McDonnell Douglas* should not apply because she has presented direct evidence of discrimination. Doc. #121 at 23, 25. Jolley's declaration details her training as a DLE by Allen, the general discontent about pay in driver services, the December 2018 meeting, her own grievance over pay, and a meeting with Brown, Hall, Kelley, and Fair the same day as Allen's meeting. Doc. #119-9. Brumfield's declaration details her efforts to secure better pay for DLEs in 2016. Doc. #119-10. Neither of these exhibits presents the kind of direct evidence contemplated by the case Allen cites in support. Doc. #121 at 23; *see Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993) (plaintiff offered direct evidence of racial animus where the record showed multiple uses of a racial slur).

discrimination under the [Equal Pay Act], a plaintiff must show that the employer pays different wages to men and women, the employees perform equal work on jobs the performance of which requires equal skill, effort, and responsibility, and the employees perform their jobs under similar working conditions." *Thibodeaux-Woody v. Hous. Cmty. Coll.*, 593 F. App'x 280, 283 (5th Cir. 2014) (cleaned up) (citing various authorities). Thus, to succeed on a wage-discrimination claim under Title VII, the Equal Pay Act, or the Equal Protection clause, Allen must show that she was paid less than her identified comparator.

Here, Allen identifies two comparators—Herrington and Easterling. However, Allen's own evidence shows that she and Herrington received equal salaries. Doc. #119-1 at PageID 1359, 1367.[18] Thus, Allen was not paid less then Herrington.

As to Easterling, the evidence shows he was paid more than Allen but he also had a different job title. *See* Doc. #119-1 at PageID 1359, 1364 (showing Allen as a "Regular Driver License Exa" with a salary of $36,375.09 and Easterling as an "OP/MGMT Analyst Principal" with a salary of $41,700.09). So the question is whether Allen can show her "circumstances [were] nearly identical" to Easterling's. *Mitchell*, 895 F.3d at 371. The record shows that in his position, Easterling was one of "two CDL auditors" who "went out and … audited locations to make sure that the … CDL examiners were doing things correctly." Doc. #119-2 at PageID 1468; *see* Doc. #119-1 at PageID 1182–84 (Allen's testimony that she had never seen a job description for Easterling's position but knew that Tommie Taylor, the other individual in that position, "was doing CDL and [she] wasn't"). Although Allen refers to performing audits as part of the TAC

---

[18] The same salaries are reflected in the defendants' exhibits, which also show that after reclassification and a pay increase, Allen and Herrington still received the same salary. Doc. #86-1 at PageID 879, 883; Doc. #133-1 at PageID 2075, 2081.

duties, there is no evidence in the record to establish that these audits required "equal skill, effort, and responsibility" as those performed by Easterling.[19] *Thibodeaux-Woody*, 593 F. App'x at 283. Thus, Easterling is not a proper comparator.

Because neither Herrington nor Easterling are proper comparators, Allen fails to establish that she was paid less than an individual outside her protected class. She therefore cannot establish a prima facie case on her Title VII, Equal Pay Act, or Equal Protection wage-discrimination claims and summary judgment is proper on these claims.

### C. Retaliation and Hostile Work Environment

The defendants argue summary judgment is also proper on Allen's retaliation and hostile work environment claims under both Title VII and the First Amendment because she has not suffered an adverse employment action with respect to her pay and her other complaints are "nothing more than criticism, oral threats, or allegedly abusive remarks by a supervisor, which do[] not rise to the level of an adverse employment action as a matter of law." Doc. #87 at 10–13. In response, Allen argues that she engaged in protected activity when she spoke out about the treatment of DLEs at the December 2018 meeting, filed her February 2019 grievance, and filed her June 2019 EEOC charge; as a result of this activity, "her TAC duties were reduced and taken away from her;" Brown did not properly comply with MDPS policies governing grievances and has "continued to retaliate against [her] by attempting to prevent her from being promoted in July 2021;" and "[t]he denial of payment for TAC duties in and of itself was retaliatory as was the failure to evaluate, and failure to follow the grievance policy and respond timely to [her]

---

[19] Allen argues that "certain employees in Driver Services were reclassified or promoted and yet still performing the same job duties," Doc. #121 at 4, but has not presented any evidence to support the conclusion that her duties were similar to Easterling's to make him a proper comparator.

grievance." Doc. #121 at 9–10, 15, 31 (emphasis omitted). The defendants reply that Allen's complaints of "not receiving a company car, having some of her 'additional tasks' reassigned to individual offices, a couple of instances of harsh language, and the Agency's failure to follow the grievance procedure to the letter … maybe [sic] erroneous but not intentional and certainly not an adverse employment action." Doc. #134 at 10. The defendants also argue Allen "has not provided any evidence to support her statement that … Brown tried to interfere with her promotion." *Id.*

### 1. Title VII retaliation

"To establish a prima facie case of retaliation [under Title VII], an employee must show (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (cleaned up).

Allen cannot establish the second or third elements. With respect to MDPS' failure to pay her for TAC duties, Allen cannot show a causal connection to her protected activity because she has been performing TAC duties without pay since well before any of the protected activity occurred. And despite arguing that the failure to follow internal procedures is an adverse employment action, Allen recognizes that "adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." Doc. #121 at 22 (cleaned up) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007)). Similarly, there is no evidence the alleged reduction[20] of Allen's TAC duties was an adverse employment decision because TAC officers are not compensated.[21] *See* Doc. #119-2 at

---

[20] Allen's deposition testimony indicates that her TAC duties "never stopped" being a part of her job until she received a promotion in July 2021 and was no longer a DLE. Doc. #119-1 at PageID 1139, 1155.

[21] While Allen argues "[t]here is no general order that TAC's are not to be paid," *see* Doc. #121 at 13, she fails to provide any evidence showing that any individual who performed TAC duties was compensated for those duties.

PageID 1461–62; Doc. #119-6 at PageID 1811. Because Allen cannot establish a prima facie case of Title VII retaliation, summary judgment is proper.

### 2. First Amendment retaliation

A plaintiff who asserts a First Amendment free-speech retaliation claim in the employment context must establish four elements: (1) he suffered an adverse employment decision, (2) his speech involved a matter of public concern, (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct.

*Moreau v. St. Landry Par. Fire Dist. No. 3*, 413 F. Supp. 3d 550, 560 (W.D. La. 2019) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004)) (cleaned up). "To be speaking on a matter of public concern, the employee must speak in his capacity as citizen, not employee." *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016).

The defendants argue Allen's First Amendment claim fails because in addition to not being able to show an adverse employment action, she cannot show she spoke in a public forum and she seeks only personal relief. Doc. #87 at 13 & n.7. Allen responds that the Fifth Circuit "has recognized that certain actions that do not constitute ultimate employment actions under Title VII -- like reprimands and disciplinary filings -- can be actionable under § 1983;" she "engaged in protected speech when she brought to the attention of MDPS officials of the need for equal pay to female [DLEs] before the filing of her grievance in February 2019;" and she "was subjected to retaliation in denying her grievance filed in February 2019 and continuing to reduce her TAC duties … and thus her compensation and classification." Doc. #87 at 32, 34.

As discussed above, Allen has not shown she suffered an adverse employment action based on the reduction of TAC duties because TAC officers are not compensated. Even if the Court assumed she suffered an adverse employment action, Allen cannot show she spoke on a matter of public concern because she cannot show she was speaking as a citizen, rather than as an employee.

*See Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) ("[W]hen a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job."). Accordingly, her First Amendment retaliation claim fails.

### 3. Hostile work environment

> An employee who brings a hostile work environment claim [based on gender] must show that (1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action.

*Saketkoo*, 31 F.4th at 1003. "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Id.* "Isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment." *Id.* (alterations omitted).

Allen argues she was subjected to harassment when "Brown badgered [her] and yelled at [her]" during the February 2019 meeting. Doc. #121 at 7. However, Allen's interactions with Brown do not rise to the level of a hostile work environment. The Fifth Circuit has "routinely held that … sporadic and abrasive conduct [such as yelling at and mocking an employee on five separate occasions over four years] is neither severe nor pervasive. And the fact that other women … may have experienced severe or pervasive treatment does not save [Allen's] claim." *Saketkoo*, 31 F.4th at 1003–04 & n.9 (collecting cases). Summary judgment is proper on this claim.

### D. Qualified Immunity

The defendants argue Fisher and Brown are entitled to qualified immunity on Allen's § 1983 claims against them because the amended complaint "alleges that [Fisher] was personally

involved in the constitutional violation, but … is silent about what he actually did" other than approving Brown's conduct, which is "insufficient to support a claim under § 1983;" and Brown's "bullying" did not amount to actionable discrimination or retaliation such that "even if the conduct alleged did violate a constitutional right, … then a reasonable official in either [Fisher's or Brown's] place would not have understood that … Brown's conduct violated that right." Doc. #87 at 20–21. Allen responds that "Fisher and Brown acted with deliberate indifference and violated the First Amendment right and retaliated against [her] for bringing matters of public concern to her employer" and their actions were "not under any circumstances objectively reasonable in light of clearly established law." Doc. #121 at 40–41.

"Section 1983 enables persons who have been deprived of any rights, privileges, or immunities secured by the Constitution and laws of the United States by the actions of a person or entity operating under color of state law to seek redress from those state actors responsible for the deprivations." *Orr v. Copeland*, 844 F.3d 484, 491–92 (5th Cir. 2016) (cleaned up). But "[t]he doctrine of qualified immunity protects [individual] government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Zadeh v. Robinson*, 928 F.3d 457, 463–64 (5th Cir. 2019). "As a prerequisite [to a qualified immunity analysis], a plaintiff must identify defendants … whose acts are causally connected to the constitutional violation alleged." *Roberts v. City of Shreveport*, 397 F.3d 287, 291–92 (5th Cir. 2005) (internal quotation marks omitted).

Here, Allen's § 1983 claims against Fisher and Brown are based on the same occurrences underlying her other claims. *See* Doc. #42 at 51–58. Because the Court has already found that Allen failed to carry her burden on each of her claims, it need not engage in a separate qualified immunity analysis and summary judgment is proper. *See Roberts*, 397 F.3d at 291–92.

18

## VI
## <u>Conclusion</u>

The defendants' motion to strike [130] and Allen's motion to strike [138] are **DENIED**.

The defendants' motion for summary judgment [86] is **GRANTED**.  A final judgment will issue

separately.

**SO ORDERED**, this 26th day of September, 2022.

/s/Debra M. Brown                  
**UNITED STATES DISTRICT JUDGE**
